(77 Misc. Rep. 524.)

## Ex parte STEWART.

(Supreme Court, Erie County, at Chambers.   September, 1912.)

1. HABEAS CORPUS (§ 38*)—CUSTODY OF CHILD—RIGHT TO RELIEF.

   Domestic Relations Law (Consol. Laws 1909, c. 14) § 70, providing that a husband or wife "an inhabitant of this state," living in a state of separation "without being divorced," who has a minor child, may apply for writ of habeas corpus to have such child brought before the court on return of which the court may award custody of the child, while not applicable to a nonresident petitioner, divorced from the mother of the child, is not the only authority for exercise of the power of the court over custody of minors; but the Supreme Court, under its equity powers, may award custody of a minor on petition of such nonresident divorced father.

   [Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 8;  Dec. Dig. § 38.*]

2. DIVORCE (§ 332*)—FOREIGN JUDGMENT—"FULL FAITH AND CREDIT."

   The "full faith and credit" clause of the federal Constitution does not prevent the courts of one state awarding on the then existing conditions the custody of minors, then living in the state with their mother, to their father though the decree of divorce of the court of another state had awarded custody to their mother.

   [Ed. Note.—For other cases, see Divorce, Cent. Dig. § 843;  Dec. Dig. § 332.*

   For other definitions, see Words and Phrases, vol. 4, pp. 2998, 2999; vol. 8, p. 7667.]

Application of Donald Stewart for writ of habeas corpus.   Motion to dismiss denied.

Reverdy L. Hurd, for relator.
Walter A. Saxon, for respondent.

WHEELER, J.   The relator seeks, in this proceeding, to obtain the custody of certain minor children, the issue of the marriage of the relator and the respondent.

It appears by the petition, upon which the writ was issued, that the parties were married and were residents of the state of Wyoming; that the relator is still a resident of that state, but that the respondent now resides in the city of Buffalo, N. Y., and has the custody of the children, the possession of whom the relator asks.   It further appears by the petition that on January 19, 1912, the relator obtained a decree of absolute divorce from the defendant in a court of competent jurisdiction of the state of Wyoming.   The petition further alleges:

"That it is impossible for the said Ida A. Stewart to give the said children a respectable home, to provide for the education and protect the moral welfare of the children."   。

Upon the return of the writ of habeas corpus, the defendant appears by counsel, and asks for the dismissal of the writ on the ground that it is insufficient in law to maintain these proceedings, and exhibits what purports to be a copy of the decree of divorce in the Wyoming court, by which the care and custody of the children in question was

awarded to the mother, the defendant in this proceeding. Although the copy of the decree is not certified, its correctness does not appear to be challenged.

The question at once arises whether this court must give full faith and credit to that decree, or has power to investigate as to who should now have the care and custody of the children. The further question is also presented whether the courts of this state have jurisdiction to entertain the proceeding at all.

[1] The proceeding cannot be maintained under the provisions of section 70 of the Domestic Relations Law. That section provides that:

"A husband or wife, being an inhaitant of this state, living in a state of separation, without being divorced, who has a minor child, may apply to the Supreme Court for a writ of habeas corpus to have such minor child brought before such court, and on the return thereof, the court, on due consideration may award the charge and custody of such child to either parent," etc.

In this case the petitioner is not "an inhabitant of this state"; nor is he living apart from the defendant "without a divorce." Consequently he does not bring himself within the authority conferred by this section.

Independent of the statute, has the court or a justice thereof power to entertain the proceeding, upon a proper presentation of facts justifying its interposition, dismissing for the moment the force and effect of the Wyoming decree awarding the custody of the children to the mother? The question has been up for consideration in a number of cases, and we think it now quite well established that the provisions of section 70 of the Domestic Relations Law are not exclusive, or the only authority for the exercise of the power of the court over the custody and possession of minor children. This statute does not undertake to cover the field, and cases constantly arise where the powers of the court are invoked to determine the right to the custody of children, where the dispute is not between husband and wife living separate from each other without a legal divorce.

The question was examined by Chancellor Walworth in the case of People v. Mercein, 8 Paige, 47, and it was there held that the power of the chancellor to issue a habeas corpus to inquire into the cause of detention of a minor child did not depend solely upon the revised statutes, but is an inherent power in the Court of Chancery, derived from the common law, but to be exercised in conformity with the provisions of the Revised Statutes on the subject.

In the case of People v. Moss, 6 App. Div. 416, 39 N. Y. Supp. 690, Justice Rumsey cites with approval the case of People v. Mercein, 8 Paige, 47, and holds that, where the custody of a child is at issue, the proper remedy is by habeas corpus, and calls attention to the fact that the English Court of Chancery claimed the right to inquire into the custody of children by virtue of the delegated power from the crown as parens patriæ.

In Matter of Knowack, 158 N. Y. 482, 53 N. E. 676, 44 L. R. A. 699, the Court of Appeals reasserted the chancery powers of the Supreme Court of this state to intervene, where the necessities of the case called for their exercise for the welfare of children, citing with

approval Eversley on Domestic Relations (2d Ed.) 501, where the author stated that:

"The Court of Chancery has, from time to time, exercised the widest powers of interference in behalf of infants who stood in need of its protection."

The opinion also cites Chancellor Kent, who said that:

"Courts of justice may, in their sound discretion, and when the morals or safety or interests of the children strongly require it, withhold the infants from the custody of the father or mother, and place the care and custody elsewhere."

In the case of Wilcox v. Wilcox, 14 N. Y. 575, it was held a court of equity had jurisdiction to take a minor child from a guardian appointed by the surrogate, and deliver it to the custody and care of its mother, where this was for the advantage of the child, by virtue of the Constitution conferring upon it all the powers of the old Court of Chancery, and holding the Code did not undertake to enumerate all the cases in which the court might act.

It will be noted that in Wilcox v. Wilcox, 14 N. Y. 575, the proceeding was instituted by petition and an order to show cause, rather than by issuing a writ of habeas corpus. In the Matter of Knowack, 158 N. Y. 482, 53 N. E. 676, 44 L. R. A. 699, the same practice was followed, and in the case of Matter of Tierney, 128 App. Div. 836, 112 N. Y. Supp. 1039, it was held, on the authority of those cases, that it was proper to invoke the chancery power of the court in that manner.

If there is any technical legal objection to proceeding by writ of habeas corpus, there is still open to the relator the procedure by petition and an order to show cause, as set forth in the cases cited.

[2] There still remains the question as to whether the provisions of the decree of divorce made by the court of Wyoming, awarding the care and custody of the children to the respondent, is so conclusive that the relator may not maintain these proceedings. It is contended that the provisions of the federal Constitution and the act of Congress of the United States requiring that "full faith and credit shall be given the judicial proceedings of other states" would be violated if this court should now assume to inquire into the provisions of the Wyoming decree, or make any disposition as to the custody of the children other than that made by the judgment of the court of Wyoming.

Before going further into the discussion of this question and the examination of the cases, it should be observed that the petition alleges that for some time prior to the date of the Wyoming decree the respondent and the children in question resided in the city of Buffalo, N. Y. While the Wyoming decree might determine the marital status of the parties as between themselves, it is very questionable whether any decree of that state would be so conclusive as to preclude the courts of this state interfering where the personal, intellectual, or moral welfare of the children demanded it. They are now, for the purposes of this proceeding, residents and citizens of the state of New York. The state, as parens patriæ, has an interest in the proper train-

ing and education of its children. It has the right to insist that their natural parents fulfill this obligation, not only to the children, but to the state; and if parents having the custody of children cannot, or do not, perform their duties, it may and should intervene in a proper proceeding, and place the children where they will be properly cared for and protected. To this extent the state itself is interested, and we do not think any decree of a foreign state should be permitted to deprive minor children of that care and attention to which they are entitled.

The question involved is not so much the relative rights of the parents as between themselves as the rights of the children. They, at least, were not parties to the divorce action, and are not bound by its decree. Being minors, they cannot act for themselves, and the court acts upon the petition and evidence produced in their behalf. Whatever orders the court may make are for the benefit of the children, whose interest and welfare are first considered, even as against the natural claims of the parents themselves. People ex rel. Pruyne v. Watts, 122 N. Y. 238, 25 N. E. 266; People v. Winston, 31 App. Div. 121, 52 N. Y. Supp. 814; Matter of Welch, 74 N. Y. 299; People v. Weissenbach, 60 N. Y. 385. Considerations affecting the health and morals of the child may justify the court in withholding its custody from its legal guardians. Matter of Welch, 74 N. Y. 299; People v. Weissenbach, 60 N. Y. 385.

We mention these things to show that a decree of the court of another state ought not to be regarded as binding on the state itself, or the children, where their welfare is at stake, especially where it should be made to appear to this court that since the Wyoming decree of divorce was rendered conditions have developed which make the mother an improper person to have charge of their maintenance and education. That is what the relator's counsel advises the court is the real ground of his application for the custody of the children.

Assuming, however, that he will be able to establish what is claimed can be proved, do the authorities sustain the right to do so? It goes without saying that this court repeatedly modifies its own decrees touching the custody and control of children where subsequent conditions justify such action. They have even gone further in the case of People v. Dewey, 23 Misc. Rep. 268, 50 N. Y. Supp. 1013, which was a proceeding by habeas corpus for the possession of a child. The relator relied upon an order or decree of a Texas court awarding to him the custody of the child, and insisted that under the "full faith and credit" clause of the United States Constitution this order was conclusive as to his right to the custody of his child. The court held, however, that this decree could only be deemed a definitive and conclusive adjudication where the state of facts remained unchanged, citing People v. Mercein, 3 Hill, 399, 38 Am. Dec. 644, and People v. Moss, 6 App. Div. 414, 39 N. Y. Supp. 690.

In the case of People v. Mercein, 3 Hill, 399, 38 Am. Dec. 644, the court held that the decision of our own courts on a habeas corpus proceeding was not conclusive as to facts which may arise after its rendition, and a second proceeding may be prosecuted notwithstanding,

where the relator set forth new and material circumstances. To the same effect is the case of People v. Moss, 6 App. Div. 418, 39 N. Y. Supp. 690.

In Wilcox v. Wilcox, 14 N. Y. 575, the court awarded the custody of a child to a parent, notwithstanding the Surrogate's Court had by its decree given its custody to another. In Matter of Knowack, 158 N. Y. 482, 53 N. E. 676, 44 L. R. A. 699, the court, under its general chancery powers, made an order restoring to the parents a child which had been legally committed to a charitable institution pursuant to the provisions of the Penal Law. In Catlin v. Catlin, 69 Misc. Rep. 191, 126 N. Y. Supp. 350, it was held that, even where a child had been legally adopted by proceedings taken in a County Court, the father might thereafter obtain possession of the child, though such an order, in effect, annulled the decree of adoption.

I am cited by the respondent's counsel to the case of Allen v. Allen, 105 N. Y. 628, 11 N. E. 143, as an authority sustaining the contention that the provisions of the Wyoming decree are final and conclusive on this court. I am, however, of the opinion that that case is an authority to the contrary. The facts are quite similar to those presented here. The relator and defendant were formerly man and wife, and lived in Illinois. The relator commenced an action for a divorce in that state, and while it was pending the defendant came to this state, bringing with him the children. The action resulted in a decree granting an absolute divorce, and awarding the relator the care and custody of the children. The relator then came to this state and instituted proceedings to obtain possession of the children, and was awarded them by the court. On appeal the court said:

"We dismiss this appeal for the reason that the courts below, upon a view of all the existing facts *relating to the welfare and interests of the infants,* exercised their *discretion* in awarding to the mother the custody of the children, and in so doing gave to the Illinois decree, not the force of *an estoppel,* or the conclusive effect sometimes to a judgment, but simply regarded it as a fact or circumstance bearing upon *the discretion* to be exercised, without dictating or controlling it."

This is undoubtedly the only force and effect that the decrees of foreign states have, so far as they concern or relate to the custody of children domiciled within this state.

After a careful consideration of the whole subject, I have reached the conclusion that the Wyoming decree is no bar to this proceeding. That decree was undoubtedly predicated and conditioned upon the continued good conduct of the defendant. That condition underlies all decrees of this character. If she has violated its conditions to such a degree as imperils the welfare of the children, then it becomes the duty of the court to act. From whatever source the proper information is laid before it, it becomes the duty of the court to inquire into the truth of the allegations made, to ascertain the facts, and then make such a disposition of the matter as the case requires.

Motion to dismiss the writ denied.