In the Matter of the Application of OUR LADY OF VICTORY HOME, at Lackawanna, N. Y., a Domestic Corporation, for the Abrogation of the Adoption of STELLA MARIE DOE.

County Court, Erie County, December 8, 1925.

**Adoption — abrogation — proceeding under Domestic Relations Law, § 117, to abrogate order of adoption of child — claim of petitioner that foster parents are unable to support, maintain and educate child sustained — welfare of child requires it to be returned to petitioner.**

An application by Our Lady of Victory Home, pursuant to section 117 of the Domestic Relations Law, for the abrogation of an order of adoption of a child born at the home on the ground that the foster parents thereof are unable to support, maintain and educate the child, should be granted, where it appears that said foster parents not only have no proper regard for their financial obligations but also live under such home conditions as cannot be said to promote the welfare of the child, the interests of whom require that she be returned to the home.

PETITION for abrogation of adoption. Proceeding under section 117 of the Domestic Relations Law to abrogate an order of adoption

granted by the surrogate of Erie county, on November 14, 1923, and recorded in Erie county clerk's office on January 7, 1924.

*Stephen V. O'Gorman,* for the petitioner.

*Julius A. Grass,* for the respondents Ross E. Holdeman and another.

NOONAN, J.   The child, known as Stella Marie Doe, was born at the home of the petitioner at Lackawanna, N. Y., on January 1, 1923, and was baptized in the Roman Catholic faith.   The validity of the adoption is conceded, and its abrogation sought on two grounds: 1. Inability of the foster parents to support, maintain and educate the child.   2. Failure of the foster parents to properly safeguard the religion of said child.

As the law in this State relating to adoption and abrogation of the same is entirely statutory (*Matter of Thorne,* 155 N. Y. 140, 143; *Matter of Livingston,* 151 App. Div. 1; *U. S. Trust Co.* v. *Hoyt,* 150 id. 621), there must be a substantial compliance with the provisions of the statute to entitle the petitioner to the relief sought.

Hearings were held and testimony taken on April 18 and May 2, 1925, both parties being represented by counsel.   A further hearing, upon notice by this court, was held on December 5, 1925, at which petitioner presented proof as to the conduct of the respondents since May 2, 1925, but there was no appearance for the respondents.

The evidence produced by the petitioner clearly shows that the respondents from the time of their arrival in Buffalo, about September 6, 1920, until the hearing in April, 1925, had on many occasions received financial assistance for their living expenses from the Charity Organization Society, the Salvation Army, and private individuals; that Mr. Holdeman was twice treated at the hospital, at public expense, for injuries; that he had radio equipment installed, which he did not and could not pay for; that he owed different persons for rent and food, and that he was inclined to run into debt for non-essentials.

At the hearing on May 2, 1925, Mr. Holdeman testified that he was earning thirty-five dollars per week as a machinist.   As this was enough to comfortably support his family, the decision in the case was delayed to see if the respondents would get along on this income.

From the evidence produced at the last hearing, it clearly appears that respondents have not improved their financial condition; that Mr. Holdeman has been in the hospital for an old trouble;

that he has not worked steadily; that Mrs. Holdeman was staying in bed until about noon; that their living rooms were not well kept; that they were not paying their living expenses; that they sold their furniture, gave up their apartment about September 11, 1925, and left Buffalo about October 7, 1925, leaving behind them an unpaid rent bill of seventy dollars, a milk bill of twenty-four dollars, and laundry, tea store and newspaper bills for smaller amounts.

There is only one proper conclusion to draw from all the evidence in the case, viz., that the respondents since coming to Buffalo have never been able to properly " support, maintain and educate " said child.

The statute (Dom. Rel. Law, § 117, as amd. by Laws of 1924, chap. 323) compels the court to determine whether the " interests of such child will be promoted by granting the application," and the decisions of our courts admonish us " to look solely to his welfare and to decide accordingly." (*Matter of Lee*, 220 N. Y. 532, 538; *Matter of Wainman* v. *Richardson*, 119 Misc. 363; *People ex rel. Pruyne* v. *Walts*, 122 N. Y. 238, 241; *People ex rel. Elder* v. *Elder*, 98 App. Div. 244, 246; *Matter of Knowack*, 158 N. Y. 482, 491; *Ullman* v. *Ullman*, 151 App. Div. 419.) It is clear that allowing the child to remain with the foster parents, who have no proper regard for their financial obligations, will not promote her welfare.

Upon all of the evidence herein, the petitioner is entitled to have the adoption abrogated on the ground of the inability of the foster parents to support, maintain and educate the child, and the further ground that the welfare of the child will be promoted by so doing.

An order may be entered abrogating the adoption on the above-mentioned grounds, and directing the return of said child to the petitioner.